NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1290-17T1

M.G.,

     Plaintiff-Appellant,

v.

S.M.,

     Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**December 26, 2018**

**APPELLATE DIVISION**

Argued December 5, 2018 – Decided  December 26, 2018

Before Judges Alvarez, Reisner, and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0446-15.

Dale E. Console argued the cause for appellant.

Gregory S. Baxter argued the cause for respondent (Caruso & Baxter, PC, attorneys; Gregory S. Baxter, on the brief).

The opinion of the court was delivered by

MAWLA, J.A.D.

Plaintiff M.G.[1] appeals from a provision of a June 16, 2017 amended final judgment of divorce and an October 10, 2017 order denying relief from part of that judgment. The issue is whether the portion of restricted stock transferred to plaintiff by his employer, which vests after the date of the complaint, is subject to equitable distribution if the vesting is contingent upon plaintiff's post-complaint employment efforts. The trial judge concluded defendant S.M. was entitled to fifty percent of all stock awards made before or near the date of complaint. However, because the judge's decision is contrary to the evidence and his credibility findings, and mistaken as a matter of law, we reverse and remand for further proceedings consistent with this opinion.

The following facts are taken from the record. The parties were married in May 1998. In 2001, plaintiff became employed as a principal consultant for a large multi-national corporation. Beginning in August 2003, and every August thereafter until 2010, plaintiff received a stock award from his employer. According to plaintiff's testimony and a corresponding summary, the stock awarded would vest in yearly tranches. For example, plaintiff received 490 shares in 2003. Those shares began to vest at a rate of 174 shares per year commencing in 2011. A similar vesting schedule was applied to the

---

[1] We use initials to protect the confidentiality of the parties' financial information.

A-1290-17T1

subsequent stock transfers, such that the stock awards and the vesting occurred on a rolling basis.

Plaintiff filed a complaint for divorce on July 28, 2014. By then, he had been granted eight stock awards. However, only three had fully vested and the remainder were due to vest post-complaint, beginning on August 31, 2014, and every August thereafter.

At trial, plaintiff also produced an informational document from his employer entitled "Overview of Stock Awards," which plaintiff, on questioning by the trial judge, confirmed contained the employer's policy. In pertinent part, the document stated as follows:

> Stock-based compensation is a key component of our reward program . . . because it provides an ownership stake in the company's success for employees who contribute over the long term. To preserve this core element of our culture, in July 2003, [we] decided to grant employees stock awards, which represent the future right to receive shares of . . . stock when a vesting requirement is satisfied.
>
>  . . . .
>
> At [our company] we believe that employees who become shareholders maintain a long-term, vested interest in sustained individual excellence and the overall success of the company.
>
>  . . . .
>
> Each eligible employee's annual stock award grant is based on his or her impact, level, and country.

Furthermore, plaintiff testified the stock plan was

> the way [the employer] retain[s] their employees and they want to make sure that you consistently perform better so if the year that it vests, if you don't perform well, it gives them reason to let you go and you don't get those [stocks], so you have to be consistently performing at a better level to be able to take advantage of the stocks that they give you.

Following the judge's questioning, plaintiff's attorney asked plaintiff: "Now with regard to equitable distribution . . . do you acknowledge that some of those stocks should be distributed to [defendant]?" Plaintiff agreed he would share the stocks "already vested" with defendant as equitable distribution. Defendant did not refute any of plaintiff's testimony regarding the stock plan, the awards he received, the conditions for vesting, or the basis on which the employer made the awards.

Following the conclusion of the trial, the judge rendered a thirty-nine page written decision addressing custody and parenting time, equitable distribution, alimony, child support, and counsel fees. In the section of his opinion addressing credibility the judge opined:

> The [c]ourt finds [p]laintiff to be credible. After observing him during his testimony, the [c]ourt determined that he was honest and sincere. His description of events was logical and supported by the facts.

A-1290-17T1

On the other hand, the [c]ourt does not find [d]efendant credible. Many of her claims were unsupported by facts or reason.

Regarding plaintiff's restricted stock units, the judge continued:

The restricted stock units ("RSUs") awarded to [p]laintiff as part of his compensation package vest over a five-year vesting schedule. As the stocks vest, they are reflected in [p]laintiff's W-2 for that year. Plaintiff concedes that [d]efendant is entitled to share in the [RSUs] that were vested as of the date of filing.

Plaintiff takes the position that the RSUs awarded on August 31, 2014 are exempt from equitable distribution based upon the post-[complaint] status of their receipt. This is incorrect. The 2014 award, not the vesting of that award, created a marital asset which will vest in five years and whose value is as of yet uncertain. The 2014 award was made in recognition of [p]laintiff's past job performance. Said past performance was during the marriage, making the units subject to equitable distribution. In Pascale v. Pascale, [140 N.J. 583 (1995),] the Court found that stock options awarded after the marriage has terminated, but obtained as a result of efforts expended during the marriage should be subject to equitable distribution. ([See also] Reinbold v. Reinbold, 311 N.J. Super. 460 (App. Div. 1998) noting that portions of a retirement incentive package offered after the divorce were based upon pre-complaint efforts and subject to equitable distribution.)

In the within matter, the [c]ourt finds that the RSUs awarded to [p]laintiff up to and including the August 2014 award are the result of pre-filing, marital efforts, and are thus subject to equitable distribution.

5

Accordingly, the judge imposed a constructive trust to facilitate distribution of the unvested stock to defendant.

After entry of the divorce, plaintiff filed a motion seeking various forms of relief, including modification of the judgment pursuant to Rule 4:50-1, as it pertained to the restricted stock. In the certification accompanying the motion, plaintiff stated:

> Additionally, I believe the [c]ourt erred and there is a mistake with regard to my stock options. The [c]ourt analyzed my . . . stock . . . [in its] decision and cited [Pascale] . . . specifically finding that RSUs award[ed] to plaintiff up to and including the August 2014 award are the result of pre-[complaint] marital efforts and thus subject to equitable distribution. I enclose . . . literature from . . . my employer[] regarding options. The information provided . . . clearly indicates that the "awardees's rights in the [stock awards] shall be affected, with regard to both vesting schedule and termination, by leaves of absence, changes in the number of hours worked, partial disability, and other changes in awardee's employment status as provided in the company's current policies for these matters." Clearly, [the] stock[s] were performance options and a reward for staying with my employer and a reward for future performance. As such, . . . defendant should not share in these options that have not vested as of the date of filing.

The document plaintiff referenced in his certification was his employer's stock award agreement pursuant to its stock plan. In addition to the language plaintiff quoted from the document, it also provides as follows:

2. Vesting Schedule and Conversion of [Stock Awards].

(a) Subject to the terms of this Award Agreement and the Plan <u>and provided that Awardee remains continuously employed</u> through the vesting dates set out below, the [stock awards] shall vest and be converted into an equivalent number of Common Shares as set out below[.]

[Emphasis added.]

Notably, the employer's cover letter enclosing stock plan documents stated: "We look forward to you making a positive impact on [the company's] future success and sharing in that success as a shareholder in our Company."

The judge denied plaintiff's motion, concluding that:

A presumption exists that stock awards result from joint, marital efforts and are thus subject to equitable distribution. <u>Pascale v. Pascale</u>[.] . . . Plaintiff's literature from [his employer] going over the general details of the stock plan fails to overcome this presumption that it was received through spousal efforts.

This appeal followed.

I.

We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-12 (1998) (citing <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co.</u>, 65 N.J 474, 484 (1974)). "We do not weigh the evidence, assess the credibility of witnesses, or make

conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). We also recognize the Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion. Cesare, 154 N.J. at 413. Thus, if we conclude there is satisfactory evidentiary support for the Family Part judge's findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)).

Although our "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility[,]'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)), "[r]eversal is warranted when the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Slutsky v. Slutsky, 451 N.J. Super. 332, 344 (App. Div. 2017) (quoting Rova Farms, 65 N.J. at 484). Furthermore, "legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

"A Family Part judge has broad discretion . . . in allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App.

Div. 2012). However, we reverse if a judge's "findings were mistaken[,] or . . . the determination could not reasonably have been reached on sufficient credible evidence present in the record[,]" or "failed to consider all of the controlling legal principles." Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009); see also Wadlow v. Wadlow, 200 N.J. Super. 372, 382 (App. Div. 1985) (reversal is required when the results could not "reasonably have been reached by the trial judge on the evidence, or whether it is clearly unfair or unjustly distorted by a misconception of law or findings of fact that are contrary to the evidence" (quoting Perkins v. Perkins, 159 N.J. Super. 243, 247 (App. Div. 1978))).

## II.

"[T]he goal of equitable distribution . . . is to effect a fair and just division of marital [property]." Steneken v. Steneken, 183 N.J. 290, 299 (2005) (alterations in original) (Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004)). After a trial judge identifies the marital assets and determines the value of each asset, the judge must decide "how such allocation can most equitably be made." Rothman v. Rothman, 65 N.J. 219, 232 (1974). This demands more than simply "mechanical division[,]" it requires a "weighing of the many considerations and circumstances . . . presented in each case." Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977), overruled on

A-1290-17T1

other grounds by Peterson v. Peterson, 85 N.J. 638, 643, n.2 (1981). This is because equitable distribution "reflects a public policy that is 'at least in part an acknowledgment that marriage is a shared enterprise, a joint undertaking, that in many ways [] is akin to a partnership.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 284 (2016) (quoting Smith v. Smith, 72 N.J. 350, 361 (1977) (quoting Rothman, 65 N.J. at 229)).

However, an equitable distribution does not presume an equal distribution. See Rothman, 65 N.J. at 232 n.6. Rather, N.J.S.A. 2A:34-23.1, requires an equitable distribution be "designed to advance the policy of promoting equity and fair dealing between divorcing spouses." Barr v. Barr, 418 N.J. Super. 18, 45 (App. Div. 2011). This policy is best implemented by evaluating the facts and evidence associated with each asset.

On appeal, plaintiff argues the trial judge erred because he ignored the evidence and testimony that post-complaint efforts were required in order for the stock to vest. Plaintiff argues the judge's reliance on Pascale is unavailing because that case addressed whether stock acquired after the date of complaint, as a result of services during the marriage, was subject to equitable distribution. Plaintiff asserts Pascale did not address a scenario where vesting was subject to a contingency, namely, a party's post-complaint employment efforts. Plaintiff points to case law from other jurisdictions which have

established a multi-factor analysis to address the issue raised here, and additionally urges us to adopt a coverture fraction methodology for the equitable distribution of stock pursuant to Marx v. Marx, 265 N.J. Super. 418 (Ch. Div. 1993).

III.

Increasingly, executive compensation has been achieved through means other than salary and retirement assets. Indeed, "[m]any companies favor stock-based compensation plans to entice, retain, motivate, and attract their employees." Donna Pironti & Mitchell Benson, Performance Awards Through Employee Stock Compensation Plans: Tax and Divorce Issues, A.B.A. Sec. of Fam. L.: Fam. Advoc., Fall 2018, at 17. Generally,

> [s]tock grants are an employee retention mechanism, as they contain vesting features that are triggered during a period set by the employer. The vesting date, the date on which the employee has the right to receive stock . . . is often based on the employee's longevity and/or specific performance. An employee may receive annual grants only a portion of which vest (and are then available for sale) when the employee achieves certain goals. Stock grants have more value to an employee because their outflow (cost) is equal to the tax on the value of the stock.
>
> [Ibid.]

In Pascale, the Supreme Court considered the equitable distribution of a spouse's stock options received throughout and after the marriage. 140 N.J. at

11

607. Specifically, the Court addressed whether a portion of the options awarded ten days after the date of complaint were subject to equitable distribution. Ibid. The trial court determined the options received after the date of complaint were not subject to equitable distribution. Id. at 608. On appeal, we concluded one of the two awards nearest the date of complaint warranted inclusion in equitable distribution. Ibid.

The Supreme Court stated, where equitable distribution is sought of assets received after the date of complaint

> [t]he focus thus becomes whether the nature of the asset is one that is the result of efforts put forth "during the marriage" by the spouses jointly, making it subject to equitable distribution.
>
> To refute such a presumption, the party seeking exclusion of the asset must bear "'the burden of establishing such immunity [from equitable distribution] as to any particular asset.'"
>
> [Id. at 609 (alteration in original) (quoting Landwehr v. Landwehr, 111 N.J. 491, 504 (1988)).]

The Court concluded

> stock options awarded after the marriage has terminated but obtained as a result of efforts expended during the marriage should be subject to equitable distribution. The inequity that would result from applying inflexibly the date of complaint rule is obvious. [One spouse] would be denied the benefit of stock options that were earned by [the other spouse] during the marriage, but were not awarded to her until slightly after the marriage terminated. Serious

12

> mischief could arise under such a hard-and-fast rule. For example, a spouse considering divorce might file her complaint just before she expects to receive a large bonus or commission, simply to deny her spouse the benefit of that asset when the court determines the value of the marital estate.
>
> [Id. at 610.]

The considerations in this case differ from those in Pascale, and the trial judge's exclusive reliance on its holding did not address them. Here, the analytical framework is not when the stock was received, but rather, the efforts required for it to vest.

Plaintiff's unrefuted testimony was clear that post-complaint efforts were necessary to cause the stock, which had not vested as of the date of complaint, to become payable. The plan documents and literature adduced in evidence at trial, and attached to plaintiff's post-judgment motion, stated vesting would occur dependent upon plaintiff's post-complaint performance. We reject defendant's argument that "performance" in this case required plaintiff merely to continue living and go to work. Nothing in the record supports this assertion. Indeed, all of the objective evidence in the record demonstrates much more was required of plaintiff as a high-level corporate employee in a highly competitive industry.

As we noted, plaintiff's employer described the stock plan as a "reward program . . . because it provides an ownership stake in the company's success

for employees who contribute over the long term." Company literature explained the stock grants were to "maintain a long-term, vested interest in sustained individual excellence and the overall success of the company." This language does not suggest the stock would vest through mere continued employment without consideration of plaintiff's level of proficiency. Nor does this language suggest the stock awards were for work already performed.

The company plan documentation, and other literature in the record, was consistent with plaintiff's testimony. Plaintiff explained the purpose of the stock award was to retain him and assure he "consistently perform[ed] at a better level." As plaintiff noted, "if you don't perform well, it gives them reason to let you go and you don't get those [stocks.]"

The trial judge misapplied his discretion because in the absence of any evidence or testimony to the contrary, he concluded the stock was earned for work performed during the marriage. The judge's findings were unsupported by the evidence and inconsistent with his own credibility findings. As we noted, the judge found plaintiff's testimony entirely credible, and reached the opposite conclusion regarding defendant. Our review of the record confirms the judge was required to reach a different result regarding the unvested stock awards in existence as of the date of complaint.

A-1290-17T1

Turning now to the mechanics of distribution, at oral argument and in his brief, plaintiff suggests we follow a coverture fraction analysis, or alternatively, consider applying the concept of "marital momentum" to address the equitable distribution of the unvested stock awards. The concept of

> "[m]omentum of the marriage" recognizes the reality that in many instances, one's occupational efforts often start off by yielding small and modest level earnings. However, these efforts may serve as a strong springboard into higher future earnings. Through continuing education, experience, and perseverance, it is fairly common for the fruits of one's occupational labors to ripen well after the seeds are planted.
>
> [Dudas v. Dudas, 423 N.J. Super. 69, 78 (Ch. Div. 2011).]

In the context of restricted stock units, it has been suggested "[t]he coverture fraction allocates the award as marital and nonmarital based on the vesting schedule, with the numerator being the time period from the date the award was granted to the cutoff date and the denominator being the period from the date of grant to the vesting date." Sandra R. Klevan, Beyond Salary and Bonus: The Where, What, and How of Complex Executive Compensation from a Divorce Perspective, A.B.A. Sec. of Fam. L.: Fam. Advoc., Fall 2018, at 12, 15.

We find neither method appropriate to determine whether the unvested portion of the stock award is attributable to the marriage. In instances where

15

an asset has been granted after the date of complaint, these principles are of little help because they presume a marital component attributable to the asset in question.

Indeed, in Thieme, a spouse who was employed for a closely held company received a "closing bonus" when the company was sold after the parties had been divorced. 227 N.J. at 272-73. The parties were married for fourteen months, but had cohabitated prior to the marriage for eight years. Id. at 272. Following the divorce, Aucoin-Thieme filed a motion seeking a share of the closing bonus, and following a trial, she was awarded a portion of the bonus attributable to Thieme's work during the marriage. Id. at 273. The trial judge applied a coverture-like formula to determine Aucoin-Thieme's share as follows:

> [T]he trial court allocated the $2,250,000 [c]losing [b]onus. It concluded that in the course of his employment, Thieme earned the [c]losing [b]onus at a rate of $14,423 per month. Multiplying that amount by a factor of fourteen, the court ruled that during the parties' marriage, Thieme earned deferred compensation in the amount of $201,923. The trial court then determined that Thieme's net income from the allocated portion of his [b]onus, after the deduction of taxes, was $100,961. It subjected that amount to equitable distribution under N.J.S.A. 2A:34-23.1, awarding thirty percent of that amount, or $30,288, to Aucoin-Thieme.
>
> [Id. at 281.]

Aucoin-Thieme appealed arguing the trial court had erred by limiting the amount subject to equitable distribution to the work performed by Thieme during the marriage. Id. at 282. The Supreme Court found the trial court had correctly determined that the portion of the bonus for work performed prior to the marriage was not subject to equitable distribution. Id. at 287. However, the Court concluded equitable principles required Aucoin-Thieme receive a greater portion of the bonus, whose payment was deferred until after the divorce because

> the prospect that Thieme would be generously compensated was a significant factor in the parties' personal and financial planning from the early stages of their relationship. Thieme and Aucoin-Thieme each relied on the expectation of deferred compensation if [the company Thieme worked for] were sold as they made important decisions for themselves and their family.

> [Id. at 290.]

The Court held

> As a remedy, a percentage of the portion of the [c]losing [b]onus that Thieme earned during the period in which the parties cohabited prior to their marriage should be deemed to be held by Thieme in constructive trust for Aucoin-Thieme. We make no determination as to the precise time period for which the [c]losing [b]onus should be shared by the parties, [or] the percentage of the [c]losing [b]onus that should be allocated to Aucoin-Thieme to avoid unjust enrichment[.]

17

[Id. at 293.]

Thus, Thieme makes it clear the court can reach beyond the parameters of the marriage and consider work performed outside of the marriage to effectuate an equitable distribution. Use of a coverture formula is ill-suited to make an equitable distribution in such a situation. Moreover, in this case, and unlike Thieme, there is no evidence in the record to support the conclusion the parties expected or relied upon the stock awards as a means of making future financial plans for the family. Plaintiff was still required to work and perform at a high level to obtain vesting. In this regard, his receipt of awards following the complaint date would not constitute an unjust enrichment. For the same reasons, a consideration of the marital momentum is also inapplicable.

Notwithstanding, plaintiff points to decisional law from other non-community property jurisdictions, namely, Baccanti v. Morton, 752 N.E.2d 718 (Mass. 2001), which we find offers a more precise and nuanced approach to the issue. In Baccanti, one spouse was employed as a manager in a company and had been granted stock options, which had not vested. Id. at 722, 725. The trial judge awarded the supported spouse one-half of the options. Id. at 722, 725. On appeal, the employee spouse argued the options were not subject to equitable distribution because they would not vest until after the divorce. Id. at 725. Alternatively, he argued that only the "options

18

attributable to efforts he expended during the marriage should be subject to division." Ibid.

After canvassing decisional law from other jurisdictions, the Supreme Judicial Court of Massachusetts noted

> [m]ost courts . . . have held that stock options are marital property only to the extent that they reflect efforts expended during the marriage. . . .
>
> . . . .
>
> As a general matter, we agree with the majority of State courts that have considered this issue. Their approach focuses on the parties' respective contributions in acquiring the asset, rather than on the date that the options were granted.
>
> [Id. at 727, 728 (citations omitted).]

The Baccanti court added:

> there may be circumstances, such as a long-term marriage in which both parties have contributed to the "partnership" and the options are exercisable soon after the divorce, where the judge finds that stock options should be deemed wholly marital property even though the options were given for services to be performed in part after dissolution of the marriage. In these cases, the judge must determine the extent of each spouse's contribution to the asset.
>
> [Id. at 728-29 (citing Pascale 140 N.J. at 610.)]

A-1290-17T1

The court then set forth a specific, multi-part approach for trial courts to follow in determining whether and to what extent stock options should be included in the marital estate:

> [T]he judge must determine if the options were given for efforts expended before, during, or after the marriage. This requires a finding as to the reason (or reasons) for which the options were given (i.e., for past, present, or future services). In making such a finding, the judge may look to the employee's stock option plan, testimony from the employee or a representative of the employer, or testimony from an expert witness, if any such evidence is offered. . . . The judge also may consider any other relevant factors or circumstances surrounding the grant, including whether the options were "intended to (1) secure optimal tax treatment, (2) induce the employee to accept employment, (3) induce the employee to remain with the employer, (4) induce the employee to leave his or her employment, (5) reward the employee for completing a specific project or attaining a particular goal, [or] (6) be granted on a regular or irregular basis." . . .

> The party challenging the inclusion of the options in the marital estate (presumably, the employee who was given the options) has the burden of proving that the options were given for future services to be performed after dissolution of the marriage. In addition, this party has the burden of establishing that the non-employee spouse did not contribute to the employee spouse's ability to acquire the options at issue and, for that reason, the value of the options either in whole or in part should not be considered part of the marital estate. . . .

> If the party with the burden of proof establishes that the options were given in whole or in part for

future services to be performed after dissolution of the marriage, and the judge determines that equity requires that the options be apportioned, the judge must calculate the portion of the options that properly may be included in the marital estate.[2]

[Id. at 729-30 (alteration in original) (citations omitted).]

We adopt the rubric suggested in Baccanti, with slight modifications and hold as follows:

(1) Where a stock award has been made during the marriage and vests prior to the date of complaint it is subject to equitable distribution;

(2) Where an award is made during the marriage for work performed during the marriage, but becomes vested after the date of complaint, it too is subject to equitable distribution; and

(3) Where the award is made during the marriage, but vests following the date of complaint, there is a rebuttable presumption the award is subject to equitable distribution unless there is a material dispute of fact regarding

_____

[2] As to the calculation to be performed by the trial judge, the court noted the majority of jurisdictions "apply some variation of a 'time rule' . . . whereby unvested options are apportioned based on the time that the employee both owned the options and was married and the time from issuance of the options to vesting." Id. at 730. However, citing the broad discretion possessed by its family court judges, the court found "that one formula will not necessarily work in every case" and declined to adopt the time rule as the exclusive means of dividing the asset. Id. at 731. For reasons we have already expressed, and because Family Part judges have broad discretion pursuant to N.J.S.A. 2A:34-23.1, we decline to adopt a formulaic approach as well.

whether the stock, either in whole or in part, is for future performance. The party seeking to exclude such assets from equitable distribution on such grounds bears the burden to prove the stock award was made for services performed outside of the marriage. That party must adduce objective evidence to prove the employer intended the stock to vest for future services and not as a form of deferred compensation attributable to the award date. Such objective evidence should include, but is not limited to, the following: testimony from the employed spouse; testimony of the employer's representative; the stock plan; any employer correspondence to the employed spouse regarding the award; and the employed spouse's stock plan statements from commencement of the award and nearest the date of complaint, along with the vesting schedule.

Had the trial judge applied these principles to the evidence before him, plaintiff would, for example, have handily rebutted the presumption the August 31, 2014 award was entirely subject to equitable distribution. Indeed, plaintiff's testimony, the stock plan award correspondence, award and vesting schedules, and the stock plan itself, strongly suggest the unvested awards were either in whole or in part unattributed to the marriage. Thus, to that extent, the stocks would not be subject to equitable distribution. We recognize there was little guidance for the trial judge on this matter. Nor did the parties have the

benefit of this opinion in presenting their arguments to the trial court. For these reasons we reach no final conclusion and remand to the judge for further proceedings and to make further findings pursuant to N.J.S.A. 2A:34-23.1 and the factors discussed above.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1290-17T1