**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4437-17T1

ARLENE MCCOY,

     Plaintiff-Respondent,

v.

DANIEL MCCOY,

     Defendant-Appellant.

_____

Submitted December 18, 2019 – Decided January 17, 2020

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0489-15.

Foley & Foley, attorneys for appellant (Sherry L. Foley and Timothy Joseph Foley, of counsel and on the briefs).

Lyons & Associates PC, attorneys for respondent (Joanna R. Adu, Chris Ann Wright, and David F. Salvaggio, on the brief).

PER CURIAM

Following a twenty-five-year marriage, plaintiff Arlene McCoy and defendant Daniel McCoy participated in a four-day trial to address the following issues: child support; college contribution; alimony; equitable distribution, including the value of defendant's paving business, plaintiff's pension, the marital residence, marital debt; credits for pendente lite payments; and counsel fees, and litigation expenses. Defendant now appeals from the April 19, 2018 final judgment of divorce, challenging the equitable distribution determination. We affirm for the reasons expressed in Judge Maritza Berdote Byrne's thorough and well-written thirty-six-page opinion.

The underlying facts are set forth in detail in the judge's written decision. We summarize those related to this appeal. Defendant started a paving business during the marriage in 1999. He reported a minimal income from the business, which did not correspond with the parties' marital lifestyle. Plaintiff testified she believed defendant's income to be much greater than he reported due to substantial unreported cash income. She testified a "considerable amount" of defendant's unreported cash income was used to construct an addition to the marital home; purchase luxury vehicles, jet skis, and dirt bikes; and pay for apartments in Brooklyn and Manhattan for one of their children.

2

Plaintiff argued defendant was voluntarily underemployed. Defendant conceded he was underemployed but blamed it on a bad economy.

The court appointed a forensic accountant to value defendant's business and earnings. Although the accountant was able to review four years of business income and expenses, the materials were incomplete. For example, the accountant received a customer ledger, which did not include customer names or invoices, because defendant advised he gave customers verbal estimates. She requested business tax returns, loan agreements, and loan documents to complete the valuation, but only received the tax returns. The accountant discovered a significant number of cash withdrawals, which contained no explanation in the accompanying memos. For the business expenses, defendant failed to provide mileage logs, even though fuel was represented as a large portion of expenses on the tax returns. He did not provide a complete equipment list, but instead provided a list containing his personal estimate of the equipment value.

The accountant concluded the business was "haphazardly run" and defendant "relied almost exclusively on [his personal accountant] . . . for business management decisions." At trial, defendant agreed with this assessment. He also confirmed he did not use invoices, and instead relied on

A-4437-17T1

verbal estimates and agreements. The accountant also concluded defendant used company funds to pay for personal expenses.

Notwithstanding the difficulty with timely and complete production of business records by defendant, the accountant was able to opine regarding defendant's compensation and the value of the business, which were greater than defendant initially represented. Although defendant initially disputed the business valuation, he later accepted the valuation during his testimony.

Plaintiff worked for the Borough of Watchung for over seventeen years. She made mandatory contributions to a pension throughout the course of her employment, including during the marriage. She also borrowed three times from her pension. Two loans were taken during the marriage, and a third loan, was taken after the complaint to pay her attorney's fees related to the divorce. Plaintiff did not seek to include the third loan as marital debt.

The parties purchased the marital residence in 1994 for $178,500. They expanded the residence from two to six-bedrooms. Although both parties contributed to the mortgage, defendant's contribution to the expense was irregular. Plaintiff testified defendant refused to contribute to the shelter expenses, forcing her to take a second job, reduce the marital lifestyle, use credit cards, and borrow money from her pension during the marriage.

A-4437-17T1

The marriage broke down in 2012, however plaintiff lacked the funds necessary to seek a divorce. She eventually moved out of the marital residence in June 2014, residing and paying rent at her father's summer home. She also continued to pay her share of the mortgage on the home to avoid foreclosure. However, defendant cashed two of her checks and kept the money instead of paying the mortgage. As a result, plaintiff stopped paying her share of the mortgage, and the home went into foreclosure. At trial, plaintiff testified regarding her efforts to prevent the home from foreclosure. Defendant denied receiving any foreclosure notices until he was formally served.

Defendant would not sell the residence. In June 2015, the court ordered him to either obtain the funds to purchase the home or list the home for sale. The court also ordered the parties to equally contribute to the mortgage, taxes, and homeowner's insurance until the buyout or sale occurred. The parties retained a realtor, however, defendant refused to sign the listing agreement. At trial, defendant initially testified he had no knowledge of the realtor, denied receiving a copy of the listing agreement, and did not recall signing any documentation. However, on cross-examination, he conceded he was aware of the realtor.

5

The parties hired a second realtor to sell the home. The realtor recommended defendant move out of the home to improve the chances of selling it. Defendant refused to sign the listing agreement.

Plaintiff filed a motion to enforce litigant's rights and ultimately a third realtor was retained. Following three months of delays and meetings with defendant, the home was listed for $620,000 in September 2016. The realtor was unable to show the home because defendant refused to secure the parties' dog. The third realtor resigned. In October 2016, plaintiff learned the home had gone into foreclosure for a second time because defendant failed to pay the mortgage. Defendant testified he did not pay the mortgage.

The court appointed a fourth realtor and imposed restraints against the family from impeding the sale of the home. The realtor listed the residence for sale in January 2017, for $670,000. The realtor attempted to show the home on several occasions, but defendant did not make himself available and turned down opportunities to do so. At trial, defendant conceded he refused to show the home on at least two occasions.

The parties eventually found a buyer for the home, who offered $553,000 contingent on the parties closing various open permits. Plaintiff testified she took time off work to meet with inspectors and provided defendant with a list of

A-4437-17T1

items to be completed at the home to close the permits. She also purchased fire alarms and obtained a certificate of occupancy. The residence was finally sold in September 2017. The net proceeds of the sale were $172,518.

Plaintiff testified in detail regarding the marital debt and submitted an explanatory summary into evidence. She also testified she spent "large sums" of money on the children following pendente lite, for which she was not seeking credit against marital debt. Judge Berdote Byrne found plaintiff testified credibly and in detail about the marital debt.

During the trial, defendant was afforded multiple opportunities to review plaintiff's evidence of the marital debt. Initially, he claimed all of plaintiff's debt was not marital. Then, he disputed debt related to a plane ticket for a trip to Kansas ordered in his name because he did not recall taking the trip. He also disputed credit card charges for book purchases, claiming he did not use the books and that the parties overspent on books during the marriage. The judge found his testimony "unpersuasive."

Judge Berdote Byrne found the total marital debt was $60,380, of which $49,159 was from plaintiff and $11,221 from defendant. She ordered the total debt divided equally and payment of defendant's half of the marital debt come from his share of the marital residence proceeds.

A-4437-17T1

The judge also ordered plaintiff pay $5000 for the forensic accounting fees, and defendant pay the remainder because he delayed and failed to provide relevant information to the accountant, hindering the process. The judge held the marital residence proceeds, defendant's business, and plaintiff's pension were subject to equitable distribution. She analyzed the N.J.S.A. 2A:34-32.1 statutory factors governing equitable distribution in detail.

The judge concluded defendant resided in the marital residence rent-free from December 2015 to September 2017, and accordingly awarded plaintiff sixty percent of the equity in the marital home. The judge determined defendant's business was worth $73,800. She awarded plaintiff forty percent of its value because plaintiff contributed to it as the primary caregiver of the children, allowing defendant to focus almost exclusively on growing the business. Citing our decision in Monte v. Monte, 212 N.J. Super. 557 (App. Div. 1986), the judge did not allocate any of the business debt to plaintiff because she found he intentionally dissipated it by admitting to running it haphazardly and damaging his credit.

The judge awarded defendant ten percent of the coverture portion of plaintiff's pension. She found defendant did not present evidence he contributed

significantly to the accumulation of the pension by taking on additional marital responsibilities.

In a final explanation regarding the distribution the judge stated:

> Moreover, defendant voluntarily dissipated the main marital assets, both the marital home and his business, to the detriment of plaintiff's equitable distribution. Finally, because the business is a going concern, defendant has the ability to earn significantly more between now and his retirement, hire workers to grow the business, and save his unreported cash. In contrast, plaintiff must live solely on her pension as the court has not awarded alimony.

## I.

Defendant raises the following arguments on this appeal:

> POINT I: THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE ALLOCATION OF EQUITABLE DISTRIBUTION.
>
> POINT II: THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PLAINTIFF [NINETY] PERCENT OF THE COVERTURE PORTION OF THE PARTIES' PENSIONS[1].
>
> POINT III: THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PLAINTIFF [SIXTY] PERCENT OF THE NET EQUITY IN THE MARITAL HOME.
>
> POINT IV: THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PLAINTIFF [FORTY]

---

[1] The record reflects there was only one pension belonging to plaintiff.

9                                                    A-4437-17T1

PERCENT OF THE PARTIES' PAVING BUSINESS WHILE ALLOCAT[ING] 100 PERCENT OF THE BUSINESS DEBT TO DEFENDANT.

POINT V: THE COURT'S DECISION ON THE ADJUSTMENT FOR MARITAL DEBT IS CLEARLY ERRONEOUS, MUST BE CORRECTED AND CONSTITUTES AN ABUSE OF DISCRETION.

We defer to a trial judge's factfinding "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). We also recognize the Family Part has "special jurisdiction and expertise in family matters," which often requires the exercise of reasoned discretion. Cesare, 154 N.J. at 413. Thus, if we conclude there is satisfactory evidentiary support for the Family Part judge's findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)).

. . . [O]ur "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility . . . .'" Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). . . .

"[This is because] [a] Family Part judge has broad discretion . . . in allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012).

A-4437-17T1

[M.G. v. S.M., 457 N.J. Super. 286, 293-94 (App. Div. 2018) (second and fifth alteration in original) (alteration omitted).]

Having considered defendant's arguments in light of the record, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). As Judge Berdote Byrne noted, it is axiomatic that an equitable distribution is not synonymous with an equal distribution. See Rothman v. Rothman, 65 N.J. 219, 232 n.6 (1974). Moreover, regarding the debt, she correctly found "[e]ven if debts are presumed to be marital, a debt can be allocated to one party based upon that party's greater earning potential."

Defendant's dissipation of the marital residence compared with plaintiff's attempts to preserve it justified the equitable distribution award regarding the residence. His uncontroverted dissipation of the business, coupled with his ability to continue operating it and earn a greater income, clearly justified allocating the business debt to him. Defendant's earning capacity and the lack of an award of alimony following a lengthy marriage justified plaintiff retaining her pension. Judge Berdote Byrne's findings are amply supported by the record and did not constitute an abuse of discretion. R. 2:11-3(e)(1)(A).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4437-17T1