**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5362-17T4

K.S.,

     Plaintiff-Appellant,

v.

J.S.,

     Defendant-Respondent.

_____

Submitted March 24, 2020 – Decided July 10, 2020

Before Judges Yannotti, Hoffman, and Currier

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0685-15.

DeTommaso Law Group LLC, attorneys for appellant (John J. Hays II, on the briefs).

Ulrichsen Rosen & Freed, LLC, attorneys for respondent (Rebecca Day and Derek Matthew Freed, of counsel and on the brief).

PER CURIAM

Plaintiff K.S. appeals from the dual judgment of divorce (JOD) entered in this action against defendant J.S. The trial judge entered the JOD on April 27, 2018, following an eleven-day trial.

Plaintiff argues the trial judge erred by: 1) requiring him to pay $900 per week in child support; 2) awarding defendant $75,000 to make up for the depletion of a joint marital investment account; 3) awarding defendant one-half of his Individual Retirement Account (IRA); 4) finding that certain Restricted Stock Units (RSU) are subject to equitable distribution; 5) awarding defendant the entire value of a condominium in North Carolina; 6) denying him a credit for overpayment of pendente lite support; and 7) ordering him to attend individual and co-parenting therapy. Following our review of the record and applicable law, we reject these arguments and affirm.

The parties married in February 2006. They had three daughters: V.S.,[1] born in 2009; E.S., born in 2011; and A.S., born in 2012.

After the birth of V.S., defendant became a stay-at-home parent. In 2010, defendant was charged with child endangerment and completed a pre-trial intervention program. The charge stemmed from an incident in which defendant

---

[1] To safeguard their privacy, we refer to the adult parties and their children by their initials. R. 1:38-3(d).

went into a supermarket to get yogurt for V.S., who was sick and asleep in the car. In 2015, plaintiff was substantiated for abuse by the Department of Child Protection and Permanency (DCPP) based on a report that he placed V.S. in a closet. He was required to attend parenting classes. The DCPP subsequently modified its finding to "not established," after determining the closet did not lock and the child was permitted to go to the bathroom.

The parties separated in January 2015; the next month, plaintiff filed a complaint for divorce. On February 5, 2015, the court denied plaintiff's emergent request for custody, without prejudice, and denied his request for exclusive possession of the marital residence.

On April 10, 2015, the court ordered the parties to attend mandatory custody and parenting mediation and granted plaintiff's request for joint custody. On May 20, 2015, the court signed a consent order appointing Laurie Poppe as parenting coordinator (the parenting coordinator) for the parties. On May 28, 2015, the court entered an order appointing a psychologist, Donald Franklin, Ph.D, to conduct an evaluation of the parties' children.

In a series of orders, the court required plaintiff to liquidate his entire First Fidelity account (the Fidelity account), which totaled $575,980.53 at the time of the filing of plaintiff's complaint, for the payment of the parties' legal and expert

fees. On January 18, 2018, the court denied plaintiff's motion to terminate pendente lite support retroactive to June 1, 2017, the date defendant began her employment. The court further provided that plaintiff shall be entitled to a Mallamo[2] credit on his pendente lite obligations "at the time of equitable distribution for any amount due and owing, as determined by the Trial Court."

At the time of trial, plaintiff was forty-one with a Ph.D in statistics and worked for Novartis since 2008.[3] Between 2010 and 2017, his total salary and bonus increased from approximately $185,000 to approximately $255,000. Since 2008, he annually received three tranches of stock options and RSUs that went into his Fidelity account when vested. Plaintiff estimated their value upon vesting was between $20,000 and $30,000.

At the time of trial, defendant was thirty-nine with a master's degree in statistics; in 2017, she resumed working as a statistical analyst for Bayer at an annual salary of $120,000, plus a bonus. Prior to the marriage, defendant acquired a condominium in North Carolina and lived there in 2008. She paid the mortgage and the homeowners' association fee from money held in a Wachovia Bank account that she maintained throughout the marriage while

---

[2] Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

[3] Plaintiff worked for Brisol-Myers Squib prior to Novartis.

working for Bristol-Meyers Squibb. The parties disputed whether plaintiff ever helped clean up the property or gave defendant money for maintenance.

Defendant estimated that monthly spending of $11,267 constituted the marital lifestyle. She asked for alimony based on a $16,896 per month lifestyle. She stated that her childcare expenses had increased because she went back to work and the children were getting older. She sought child support of $1398 per week, claiming that childcare expenses were $9777 per month and she allocated sixty-two percent of those expenses to defendant.

Plaintiff listed his annual salary as $181,468, plus variable annual bonuses, and his current monthly expenses as $9556. Overall, he asserted total assets subject to equitable distribution was $1,000,040, and total assets not subject to equitable distribution was $285,692. The stipulated value of the marital home was $505,000, with a mortgage of $359,000, as of the date of the complaint.

Dr. Franklin testified that he found both parties to be fit parents, each with minor psychological problems. Dr. Franklin was concerned that plaintiff coached the children, which could lead to parental alienation. He further found plaintiff could be rigid with a "very high need of being in control" and resistant to cooperation; as a result, he needed to learn how to work cooperatively with

defendant. Dr. Franklin recommended joint legal custody, with defendant as the parent of primary residence, and recommended appointing a parenting coordinator.

The parenting coordinator testified that plaintiff regularly did not respond to defendant's request to participate in the children's activities; in addition, co-parenting was non-existent because plaintiff refused to participate. As a result, the parenting coordinator was unsure whether co-parenting therapy would prove helpful. She further testified that plaintiff repeatedly challenged her recommendations.

Psychiatrist Morton Fridman, who conducted a psychiatric examination of plaintiff, testified that plaintiff had compulsive personality features that caused him to be "rigid." Dr. Fridman recommended that plaintiff engage in individual counseling; however, plaintiff failed to do so. Psychiatrist Roy Lubit, who conducted a psychological examination of defendant, concluded that she had no significant psychopathology that would adversely affect her parenting, other than stress in reaction to the marital situation.

The judge adopted the parenting coordinator's conclusion and found that the communication between the parties was poor and predominantly plaintiff's fault; as a result, he granted joint custody on the condition that plaintiff comply

with therapeutic and co-parenting therapy. The judge ordered plaintiff engage in co-parenting therapy to "learn how to co[-]parent" and required plaintiff complete co-parenting therapy within thirty days. If plaintiff failed to complete the therapy successfully, the judge stated he would treat the failure as a "substantial change in circumstances." The judge also ordered individual therapy for plaintiff, "focusing on anger management and parental alienation," and made the therapies a condition of joint legal custody and parenting time.

The judge awarded defendant $44,000 a year in alimony for five years. Turning to child support, the judge estimated the parties earned nearly $400,000 in combined salary. The judge then considered the factors set forth in N.J.S.A. 2A:34-23(a) and noted that because defendant was a stay-at-home parent for over seven years, she required additional child support to maintain a proper lifestyle for the three children. He determined that plaintiff could afford to pay that additional amount. The judge reasoned that because "this is a high-income case" he could deviate from child support guidelines and required plaintiff pay $900 a week instead of $731.

In denying plaintiff's subsequent motion for reconsideration of the child support award, the judge stated that he had

> determined the reasonable needs of the children by reference to schedule A, B, and C expenses as listed on

both parties' CIS's,[4] but particularly those schedule C expenses for the children as listed by defendant. The court struck a reasonable balance between defendant's certification of her current lifestyle and the joint lifestyle of the parties during the marriage. The court found that $847.00 per week was warranted as a supplemental amount above the guidelines to meet the reasonable needs of the children. The court used $731.00 as the base support obligation. The court next determined that an additional $847 per week would satisfy the reasonable needs of the children. These amounts combined to equal $1,578.00 per week, or $6,785.00 per month. . . . The $1,578.00 per week figure was then multiplied by plaintiff's 57% income share, which set [plaintiff]'s share of child support obligation at $900.00.

The judge found the North Carolina condominium constituted defendant's premarital asset and plaintiff failed to prove marital funds were used to contribute to the upkeep of the property. Turning to the Fidelity account valued at $575,980.53, the judge found the funds in the account were marital assets and subject to equitable distribution; however, he further found "plaintiff . . . dissipate[d] a significant portion of that account," noting that "most of the money went for his attorney[']s fees."

The judge reasoned plaintiff dissipated a "significant portion" of the Fidelity account on attorney's fees by filing excessive and unnecessary motions

---

4  Case Information Statements.

and additionally created "a ton of work for the experts by not cooperating with them." Therefore, plaintiff received more of a benefit from the Fidelity account than defendant. Based on equity and fairness, the judge found defendant should "receive a credit of $75,000 from the value of [the Fidelity] account" but further acknowledged he would not be awarding attorney's fees in the case because the parties did not proceed in bad faith. The judge explained the $75,000 represented a "reclamation of the attorney[']s fees for defendant. . . ."

In his supplemental decision, the judge elaborated on his explanation of the Fidelity account in relationship to not awarding attorney's fees. The judge explained that plaintiff's expenses far exceeded defendant's and although he declined to award attorney's fees, the $75,000 represented a "de facto counsel fee award" because defendant had to borrow considerable money to finance the litigation. Similarly, the judge denied defendant's request for attorney's fees because he found no bad faith existed on plaintiff's part. Rather, he found that the attorney's fee award was a matter of equity.

In denying plaintiff's motion for reconsideration, the judge stated, regarding the Fidelity account,

> [Plaintiff]'s aggressive 'scorched earth' approach to motion practice and obstinate refusal to comply with many of the experts' recommendations . . . required the parties to expend significant marital funds to litigate the

> case. . . . Based on the numerous motions related to compliance, reconsideration, and constant acrimony that he often unilaterally imposed, the court found that plaintiff intended to deprive [defendant] of her share of several marital assets, including this account. Therefore, the court found that as a matter of equity and fairness that a modest $75,000 credit to defendant . . . was warranted . . . .
>
> The court notes that the value of this asset . . . as of the filing of the complaint for dissolution, was $575,980.53. Further, the court intended . . . this restoration [as] . . . a partial award of attorney's fees . . . that was clearly warranted under the circumstances of this case.

The judge found plaintiff's $8,071.47 Fidelity IRA subject to equitable distribution and ordered defendant receive $4,035.74. As for the 688 RSUs paid out prior to the divorce, the judge held them subject to equitable distribution and divided them equally. The judge found plaintiff was not eligible for any Mallamo credits because he did not find it was warranted. He noted defendant "was receiving $4,790 a month. As it turns out after the hearing, I think that was low," and that plaintiff should have been paying more.

The judge also denied reconsideration of his rulings regarding plaintiff's IRA and RSUs, reasoning that plaintiff failed to satisfy his burden that the accounts were immune from equitable distribution.

A. Child Support Issue.

Plaintiff argues the judge erred in ordering him to pay $900 a week in child support, asserting he incorrectly determined the children's reasonable needs. He contends the judge failed to issue sufficient findings to support its conclusion in its motion for reconsideration decision that the children had an overall reasonable support need of $1578 per week.

We review a trial court's award of child support for abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). If consistent with the law, we will not disturb such an award unless we find it manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice. Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001). The findings of the trial court are binding on appeal when supported by adequate, substantial and credible evidence. Id. at 316.

In determining the amount to be paid for child support, and the period of support, the court in those cases not governed by court rule must consider the following factors:

1) Needs of the child;

2) Standard of living and economic circumstances of each parent;

3) All sources of income and assets of each parent;

4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

5) Need and capacity of the child for education, including higher education;

6) Age and health of the child and each parent;

7) Income, assets and earning ability of the child;

8) Responsibility of the parents for the court-ordered support of others;

9) Reasonable debts and liabilities of each child and parent; and

10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

Child support awards are ordinarily calculated pursuant to the guidelines provided in the rules. Pascale v. Pascale, 140 N.J. 583, 593 (1995); Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX to R. 5:6A (2020). Where the parties' combined income exceeds the threshold specified by the guidelines, the court must apply those guidelines up to the threshold amount and supplement the resulting basic support award with a discretionary sum based on the considerations outlined in N.J.S.A. 2A:34-

12

23(a). Caplan v. Caplan, 182 N.J. 250, 270-71 (2005). The court is afforded a great deal of discretion in that undertaking. Id. at 271-72.

In the context of high-income parents whose ability to pay is not an issue, the dominant guideline for consideration is the reasonable needs of the children, which must be addressed in the context of the standard of living of the parties. Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002). A balance must be struck between the reasonable needs, in light of lifestyle, and an inappropriate windfall. Id. at 582. The enhanced child support award in high income cases accords with the general principle that children are "entitled to not only the bare necessities, but the benefit of their parents' financial achievement." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 546 (App. Div. 1992). An award for a family with net income in excess of $187,200 per year shall not be less than the amount for a family with a net income of $187,200 per year. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix Appendix IX-A to R. 5:6A at ¶ 20(b) (2020).

The parties' combined income exceeded the $187,200 yearly income threshold set forth in Appendix IX-F, requiring a minimum of $731 per week of child support for three children. Plaintiff's argument that the judge erred in believing the $731 weekly figure constituted what plaintiff owed by himself,

13

rather than as a total obligation for both parties, is misguided. In ruling on plaintiff's motion for reconsideration, the judge explained the $847 weekly child support figure, in addition to the maximum guideline figure of $731 per week, for a total of $1578 per week, constituted the combined child support obligation of both parties.

Nevertheless, plaintiff argues the judge failed to explain how he determined the $1578 per week figure and similarly claims his $900 per week support obligation was not supported by substantial credible evidence in the record.

In ruling on plaintiff's motion for reconsideration, the judge stated he determined the reasonable needs of the children based on both parties' CISs, but primarily on defendant's $11,011 monthly schedule C expenses. Defendant's overall schedule expenses were $16,896 per month. The judge used the $731 from the guidelines as a "base support obligation" and determined that an additional $847 per week of supplemental support above the guidelines would reasonably satisfy the parties' obligations to their children. Plaintiff 's obligation of a $900 weekly child support payment represented fifty-seven percent of the parties $1578 obligation.

A-5362-17T4

The judge attached a completed child support guideline worksheet to the final order, but incorrectly indicated an $832 per week supplemental award, rather than the $847 he ordered; however, a completed child support guideline worksheet attached to the final order is not an acceptable substitute for judicial findings on which the order must be based. Fodero v. Fodero, 355 N.J. Super. 168, 170 (App. Div. 2002).

The court's determination to supplement the child support obligation above the Guidelines in this instance is distinguishable from Elrom v. Elrom, 439 N.J. Super. 424, 442-43 (App. Div. 2015), where we held that the "omission of critical factual findings, supporting the basis to supplement the Guidelines support award, impedes our review and requires a remand," and Fodero, 355 N.J. Super. at 170, where we ordered a remand because we could not "determine the source of the figures used by the motion judge which form the foundation of the child support calculations." Here, the judge specifically relied on each party's CIS and plaintiff does not challenge the inclusion of any specific costs, as was done in Elrom.

Plaintiff argues the judge cited the parties' schedule A, B and C expenses, but did not utilize the specific numbers in those schedules in making his $847 weekly supplemental award and contends the child support award constituted a

windfall to the defendant.  He cites Strahan v. Strahan, 402 N.J. Super. 298, 305-06 (App. Div. 2008), where we ordered the husband to pay ninety-one percent of the child support award in a non-alimony divorce.  In holding that the trial court failed to make specific findings of fact necessary to sustain its decision regarding the amount of supplemental child support, we noted that the court failed to analyze the wife's CIS to determine what was essential for the children or the accuracy and appropriateness of those needs.  Id. at 310.  "[T]he court did not discuss what portion of those expenses was for the benefit of the children and what portion was for the benefit of the [wife]."  Ibid.

Unlike in Strahan, alimony was awarded in this case.  Thus, there is no issue of whether the child support award was to benefit defendant rather than the children, or other evidence to indicate the court's intention.  In addition, plaintiff did not challenge defendant's claims regarding the needs of the children.  Therefore, while the judge's incorporation of the CIS by reference, without further analysis, may not have been optimum, the factors that warranted a remand for detailed breakdown in Strahan are absent here.  Accordingly, we affirm the trial judge's determination that plaintiff was required to pay $900 weekly in child support.

B. <u>Award of $75,000 to Defendant</u>.

Plaintiff contends the trial judge erred in awarding defendant $75,000 as compensation for the parties' unequal use of the Fidelity investment account to meet their pendente lite counsel and expert fees.  He argues the judge erred in finding he dissipated the assets in the account because they were used pursuant to court order, and if viewed as counsel fees, they were awarded without the proper analysis.  In the same vein, plaintiff maintains that the judge erred in making new findings of fact when denying his motion for reconsideration.

Marriage is a shared enterprise and, as a result, when a marriage is dissolved the assets should be fairly divided by the parties.  <u>Rothman v. Rothman</u>, 65 N.J. 219, 229 (1974).  The court conducts a three-part analysis when distributing a marital asset.  <u>Id.</u> at 232.  First, the court decides what property is eligible for distribution, then it determines the value of the property, and finally it decides how much to equitably allocate to the parties.  <u>Ibid.</u> Importantly, the term "equitable" does not necessitate that the parties receive equal shares, but rather the court provides the parties with a fair division achieved by applying a series of factors set forth in N.J.S.A. 2A:34-23.1.

Thus, the court must consider, but is not limited to, the sixteen statutory factors set forth in N.J.S.A. 2A:34-23.1. Carr v. Carr, 120 N.J. 336, 348 (1990). These factors include:

a) The duration of the marriage or civil union;

b) The age and physical and emotional health of the parties;

c) The income or property brought to the marriage or civil union by each party;

d) The standard of living established during the marriage or civil union;

e) Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f) The economic circumstances of each party at the time the division of property becomes effective;

g) The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

h) The contribution by each party to the education, training or earning power of the other;

i) The contribution by each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j) The tax consequences of the proposed distribution to each party;

k) The present value of the property;

l) The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m) The debts and liabilities of the parties;

n) The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple or children;

o) The extent to which a party deferred achieving their career goals; and

p) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23.1.]

Thus, one factor the court considers when making an equitable distribution is the contributions of each party to the acquisition, dissipation, and appreciation of the amount or value of the marital property. N.J.S.A. 2A:34-

23.1(i). Furthermore, the court does not simply mechanically divide the marital assets, but it weighs the unique circumstances of each case. Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977). If a party contends that an asset is immune from equitable distribution, the burden of proof lies with the challenging party. Landwehr v. Landwehr, 111 N.J. 491, 504 (1988).

When the parties appeal the designation of assets subject to equitable distribution and valuation, the standard of review applied is whether the trial court's decision was supported by sufficient credible evidence in the record. Rothman, 65 N.J. at 232-33. When the parties appeal the amount of the equitable distribution award or the manner of allocation, a reviewing court applies an abuse-of-discretion standard. Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978).

In making an equitable distribution of marital property, a court must consider whether a party has dissipated an asset. Kothari v. Kothari, 255 N.J. Super. 500, 506 (App. Div. 1992). While the Legislature did not define dissipation, "the concept is a plastic one, suited to fit the demands of the individual case." Ibid. Generally, dissipation may be found where a spouse uses marital property for his or her own benefit, with the intent of diminishing the

other spouse's share of the marital estate, at a time when the marriage relationship was in serious jeopardy. Id. at 506-07.

Here, the judge directed the parties to utilize the Fidelity account, pursuant to a court order. It is well settled that the family court may direct, pendente lite, the parties to sell assets to fund the litigation. R. 5:3-5(c). Similarly, our Supreme Court has specified that a trial court may exercise its discretion to order the sale of marital assets and the utilization of the proceeds in a manner as "the case shall render fit, reasonable, and just." Randazzo v. Randazzo, 184 N.J. 101, 113 (2005). The Court also recognized that while the proceeds could be used to pay marital obligations, they could also be placed in escrow pending final distribution, while emphasizing that the Family Part is a court of equity. Ibid.

Plaintiff did not voluntarily dissipate the assets in the Fidelity account with the intent to diminish defendant's share in the marital estate. Additionally, plaintiff did not engage in any unapproved action to use the funds for his own benefit. Thus, we cannot sustain the judge's reliance on dissipation of assets in the equitable distribution context as the basis for the $75,000 award. See Kothari, 255 N.J. Super. at 506 (explaining that dissipation of marital assets occurs when a spouse uses marital property for his or her own gain, unrelated to the marriage, when the continued relationship is in danger).

Nor do we find it appropriate to undertake a counsel fee analysis. The judge denied both parties' request for counsel fees, concluding neither acted in bad faith. Therefore, we view the judge's statements regarding counsel fees in the context of the $75,000 award as dictum, but relevant in providing an alternative basis for the award. This is particularly true since the record does not reflect that defendant filed an affidavit of services, as required by Rule 5:3-5(c), and the court stated that it did not have "the exact number" of the funds that went for counsel fees. Nonetheless, a judgment will be affirmed on appeal if it is correct, even if the court failed to provide correct reasons for the decision. Govito v. W. Jersey Health Sys., Inc., 332 N.J. Super. 293, 321 (App. Div. 2000). Based upon our review of the record, we conclude the judge's $75,000 award should be upheld based on equitable principles. See Mamolen v. Mamolen, 346 N.J. Super. 493, 498 (App. Div. 2002) (concluding that family courts are courts of equity and can disregard form in favor of substance), and we decline to disturb the court's ruling.

In this instance, the trial judge awarded defendant the $75,000 because plaintiff filed unnecessary motions and was not cooperative with the experts, thereby driving up the cost of attorney's and expert's fees. Since the court found that plaintiff made greater use than plaintiff of the $575,000 in the Fidelity

account, an account that would have been subject to equitable distribution, it concluded that defendant was entitled to the $75,000 as a matter of equity.

Plaintiff asserts there is no evidence in the record to support the judge's conclusion that he received more funds from the liquidation of the Fidelity account to pay his counsel and expert fees. However, plaintiff filed two motions to quash subpoenas for his employment records and two motions for reconsiderations that he later acknowledged could have been resolved if he communicated with defendant. In addition, he filed a motion to change the children's pediatrician and filed a motion to dismiss the parenting coordinator for failing to meet with him, even though he did not ask the coordinator for a meeting.

Morover, plaintiff failed to comply with an order authorizing defendant's access to his bank accounts in India, did not consent to defendant's request to have the children undergo a therapeutic evaluation, filed an order to show cause in late 2017 to redact certain confidential information (bank account numbers), without first asking that defendant do so voluntarily, and decided not to go ahead with an expert's report without disclosing that fact to defendant.

We therefore find the record contains sufficient evidence to support the judge's determination that plaintiff's conduct had an adverse impact upon the

 A-5362-17T4

funds in the Fidelity account and the resulting equitable award in favor of defendant. Equitable remedies are distinguished for their flexibility, unlimited variety, and adaptability to circumstances. Sears Mortgage Corp. v. Rose, 134 N.J. 326, 354 (1993). The trial judge's application of such remedies is entitled to deference and will not be reversed absent an abuse of discretion involving a clear error in judgment. In re Estate of Hope, 390 N.J. Super. 533, 541 (App. Div. 2007). Implicit in that exercise of discretion is the court's search for a just result. Ibid. We therefore uphold the judge's $75,000 award to defendant as a matter within the court's equitable discretion.

C. Individual Retirement Account.

Plaintiff argues the court erred in awarding defendant half of his Fidelity IRA as part of its equitable distribution award, asserting the determination was not supported by substantial credible evidence.

Plaintiff failed to point to any credible evidence in the record to establish the IRA was a premarital asset. See Rothman, 65 N.J. at 232-33. The IRA was liquidated by court order to pay for experts and fees. Plaintiff claims the account was one that he acquired at Bristol-Myers before marriage and rolled over the account, after he began working for Novartis. He maintains the pre-marriage portion should be omitted from equitable distribution; however, he concedes that

he did not possess any statements from Bristol-Myers Squib as to his pre-marriage contributions.

Thus, plaintiff has failed to provide evidence in support of his partial immunity claim. Pascale, 140 N.J. at 609; Cf. Winer v. Winer, 241 N.J. Super. 510, 526 (App. Div. 1990) (value of a plaintiff's retirement plan earned during marriage was subject to equitable distribution where the defendant demonstrated the amount the plan earned during that time). Without evidence of the amount of the IRA pre-marriage, plaintiff failed to satisfy his burden of proof. We therefore hold that the court did not err in subjecting the IRA to equitable distribution.

D. Restricted Stock Units.

Plaintiff argues the court erred by holding the RSUs Novartis granted him in January 2015, which vested in January 2018, were subject to equitable distribution because the RSUs were not awarded as a result of what occurred during the marriage. He further asserts the trial judge's findings were not supported by adequate and credible evidence in the record.

Property qualifies for equitable distribution when it is attributable to the expenditure of effort by either spouse during the marriage. Pascale, 140 N.J. at 609. In addition, property that is acquired after a party files for divorce but as

a reward for or a result of efforts expended during the marriage, normally will be the subject of equitable distribution. Id. at 612. The burden of establishing the immunity of property from equitable distribution lies with the party seeking exclusion. Id. at 609.

A Family Part judge has broad discretion in allocating assets subject to equitable distribution. Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012). Only where the findings were erroneous, or the determination could not reasonably have been reached based on sufficient credible evidence in the record, will an abuse of that discretion be found. M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018).

Assets subject to equitable distribution include stock options acquired during the marriage. Heller-Loren v. Apuzzio, 371 N.J. Super. 518, 530 (App. Div. 2004). The dispositive question is whether the stock options were granted in consideration for actions undertaken during the marriage. Ibid. We recently adopted the following "rubric":

> (1) Where a stock award has been made during the marriage and vests prior to the date of the complaint it is subject to equitable distribution;
>
> (2) Where an award is made during the marriage for work performed during the marriage, but becomes vested after the date of the complaint, it too is subject to equitable distribution; and

A-5362-17T4

(3) Where the award is made during the marriage, but vests following the date of the complaint, there is a rebuttable presumption that the award is subject to equitable distribution unless there is a material dispute of fact regarding whether the stock, either in whole or in part, is for future performance.

[M.G., 457 N.J. Super. at 302.]

The party seeking to exclude such assets from equitable distribution bears the burden to prove that the stock award was made for services performed outside of the marriage. Ibid. Objective evidence must be adduced to show that the employer intended the stock to vest for future services and not as a form of deferred compensation attributable to the award date. Ibid. Such evidence should include, but is not limited to: testimony from the employed spouse; testimony of the employer's representative; the stock plan; any employer correspondence regarding the award; and the employed spouse's stock plan statements from the commencement of the award and the date nearest to the complaint, along with the vesting schedule. Ibid.

Plaintiff cites Robertson v. Robertson, 381 N.J. Super. 199, 203 (App. Div. 2005), where the husband received stock options after the parties separated and three days before the divorce complaint was filed. The stock options would vest in one-fourth increments each year over the ensuing four years. We found

the options were not subject to equitable distribution.  Id. at 204-06.  We noted the husband moved from the marital home prior to starting at the job that provided the stock options and reasoned,

> [T]he conclusion is inescapable that they were offered as an inducement to commence employment, not as recognition for past performance with the company . . . .  There is no evidence that the vesting of these options over a subsequent period of four years was designed for any purpose other than as a means to insure the [husband]'s continued employment with the company.  As such, the options in no fashion represented compensation attributable to the couple's joint marital endeavors.
>
> [Id. at 205.]

However, we find the facts here are more comparable to Pascale, 140 N.J. at 607-11, where the Court held that stock options awarded to the wife ten days after she had filed for divorce were a form of deferred compensation obtained as a result of efforts she had expended during the marriage, and were therefore subject to equitable distribution.  The Court rejected the wife's argument that the majority of the shares were awarded in recognition of a job promotion that imposed increased responsibility in the future.  Id. at 607.  Rather, it adopted the trial court's conclusion that the promotion came from a result of the wife's excellent job performance, which accrued during the marriage.  Id. at 610.

Plaintiff argues the 2015 RSUs were an enticement to remain at Novartis because he could lose the RSUs if he left, and the majority of the vesting occurred after the filing of the complaint. However, plaintiff only presented the number of RSUs awarded and their vesting dates and failed to provide any relevant evidence from his employer, the stock plan, or any related correspondence, as set forth in M.G. Additionally, plaintiff failed to offer clear evidence regarding the issue of whether the RSUs were an inducement to continue working at Novartis or a reward for services rendered. Therefore, plaintiff failed to overcome the rebuttable presumption that the RSUs were not immune from equitable distribution.

Plaintiff now argues for the first time that the RSU issue should be remanded for reconsideration in light of our decision in M.G., which was issued after he filed his notice of appeal in this case. However, plaintiff failed to offer sufficient evidence to support his claim that the RSUs were given in anticipation of future services or as an inducement to continue working at the company.

Therefore, we find the judge did not abuse his discretion in determining the 688 RSUs awarded prior to the filing of the complaint are subject to equitable distribution. Under the circumstances, we will not upset the judge's findings and remand simply to have him revisit this issue, particularly because the record

29

contains sufficient evidence for us to conclude the RSUs are not immune from equitable distribution.

E. North Carolina Condominium.

Plaintiff asserts the court erred by holding the entire value of the North Carolina condominium was not subject to equitable distribution because defendant paid the mortgage on the unit from marital funds. Plaintiff contends defendant's payment of the mortgage from marital funds should subject the condominium to equitable distribution.

In Valentino v. Valentino, 309 N.J. Super. 334, 338-39 (App. Div. 1998), we held the wife was entitled to ten percent of the value of the husband's gas station, even though it was a premarital asset. The mortgage on the property was paid off throughout the marriage from income received through a separate business. As a result, the property increased in value during the marriage. The wife established her contributions to the home and children, and working at a part-time job, permitted the husband to work at the gas station, which helped increase its value. Id. at 340. See also Griffith v. Griffith, 185 N.J. Super. 382, 385 (Ch. Div. 1982) (non-owner's spouse's contribution to the enhancement of a pre-owned asset, the marital home, could consist of mortgage pay-down during

the marriage and could convert an immune, pre-acquired asset into one whose appreciation is eligible for distribution).

Unlike Valentino, plaintiff failed to establish the condominium increased in value during the marriage, or that his efforts allowed defendant to increase its value. While plaintiff is accurate that defendant paid the mortgage from funds acquired after marriage, like Griffith, the record also establishes that she deposited the rent collected on the condominium in that same account. While neither party established the complete value of each mortgage payment made, or rental payment received, neither Valentino nor Griffith involved the receipt of rental payments on the properties in question. Therefore, we find those cases distinguishable. We conclude plaintiff failed to present substantial credible evidence that the North Carolina condominium was not immune from equitable distribution.

F. Mallamo Issue.

Plaintiff argues that the court erred in denying him a credit for overpayment of pendente lite support. Plaintiff contends his pendente lite support obligation should have terminated on June 1, 2017, after defendant began her employment. In a January 31, 2018 order, the motion court denied termination of the pendente lite support retroactive to June 1, 2017, but ordered

plaintiff would be entitled to a <u>Mallamo</u> credit "at the time of equitable distribution for any amount due and owing, as determined by the Trial Court." However, the trial judge denied the credit after he found the $4790 monthly pendente lite support was too low.

Plaintiff's argument that the trial judge erred in denying his request for a <u>Mallamo</u> credit lacks sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). The record clearly supports the judge's finding that the credit was not warranted because, in light of the final decisions on alimony and child support, plaintiff should have been paying higher pendente lite support. As a result, plaintiff lacked any basis to claim he overpaid his pendente lite support.

G. <u>Therapy Issue</u>.

Plaintiff argues the court erred in ordering him to attend individual psychiatric therapy because it did not find parental alienation. Plaintiff contends the court erred in requiring him to attend co-parenting therapy as a condition of continued joint custody because the court impermissibly delegated its parens patriae responsibility to decide custody and parenting time disputes to a co-parenting therapist.

A court may "make such order . . . as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the case shall render fit, reasonable and just." N.J.S.A. 2A:34-23. Pursuant to N.J.S.A. 9:2-4, a court may enter an order establishing joint custody, sole custody or any other custody arrangement the court determines to be in the best interests of the children. Thus, courts have "wide latitude to fashion creative remedies in matrimonial custody cases." Beck v. Beck, 86 N.J. 480, 485 (1981). Custody determinations are "acutely fact-sensitive." Id. at 490. Such determinations are reviewed for abuse of discretion. Pascale, 140 N.J. at 611.

Joint custody requires that each parent "exhibit a potential for cooperation in matters of child rearing." Beck, 86 N.J. at 498. A joint legal custodian has an ongoing responsibility to act in a child's best interest. C. Madison v. W. Davis, 438 N.J. Super. 20, 46 (Ch. Div. 2014). If either parent fails to meet this responsibility, the court has the authority to order remedies including co-parenting counseling. Id. at 45-46. As the court explained in Madison:

> Joint legal custody is more than simply an honorary title bestowed upon a parent. Rather, a joint legal custodian has an ongoing responsibility to act in the child's best interest, which includes reasonable communication and cooperation with the other joint legal custodian in a positive and constructive fashion. Hence, if two joint legal custodians have ongoing difficulties in meeting this very basic component of their roles, then the court

33

> may order . . . co-parenting counseling as a condition of ongoing joint legal custody, consistent with parens patriae jurisdiction and the court's own obligation to protect the best interests of the child.
>
> [Id. at 46.]

In this case, the record established well-founded concerns regarding plaintiff's ability to co-parent and to deal with issues such as rigidity and a need for control. Dr. Franklin expressed concern about negative comments plaintiff made about defendant to the children, and that plaintiff appeared to be coaching the children. Plaintiff 's own psychiatrist testified that plaintiff had compulsive personality features and that he should engage in individual counseling.

The record established plaintiff was less than cooperative in co-parenting. The parenting coordinator testified that co-parenting was basically non-existent because plaintiff refused to engage with defendant. Dr. Franklin testified that plaintiff needed to stop being resistant and to learn how to work cooperatively with defendant. We conclude the record contains substantial credible evidence to support the judge's decision to require individual and co-parenting counseling. The judge did not delegate his authority to decide custody disputes. Nor did he "improperly delegate[] unreviewable decision-making power to a third party." P.T. v. M.S., 325 N.J. Super. 193, 215 (App. Div. 1999). The

counselor only has the authority to determine plaintiff's progress, not whether joint custody will be terminated, or parenting time reduced.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION