**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2271-21

MARGARET S. FREY,

      Plaintiff-Appellant/
Cross-Respondent,

v.

THOMAS G. FREY,

      Defendant-Respondent/
Cross-Appellant.

_____

Submitted February 26, 2024 – Decided March 28, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0789-18.

Deborah A. Rose, attorney for appellant/cross-respondent.

Andril & Espinosa, LLC, attorneys for respondent/cross-appellant (Antonio R. Espinosa, on the briefs).

PER CURIAM

The parties both appeal from the trial court's November 16, 2021 order entering a Dual Judgment of Divorce (DJOD) and two subsequent orders entered after motions for reconsideration, issued February 16, 2022, and October 19, 2022, respectively. The appeals stem from the case's long procedural history and an eleven-day trial, spanning twenty-one months.

Plaintiff asserts the trial court erred by (1) awarding her only four years of limited duration alimony in the amount of $1,500 per month after the dissolution of the parties' thirty-three-year marriage; (2) determining the marital estate and its subsequent division after subtracting for monies owed to her; and (3) awarding defendant $10,000 in "consequential" attorney fees. Defendant contends the trial court should not have awarded any alimony given each parties' financial circumstances. Defendant also appeals the denial of several credits he maintains should have been awarded in his favor.

After reviewing the record in light of the arguments advanced by the parties, and applying the law to the facts found, we reverse and remand for new findings with respect to equitable distribution, alimony, and attorney fees.

I.

We glean the following facts from the record. The parties married in August 1988. Plaintiff owned a dance studio for approximately twenty-four

A-2271-21

years. The studio was purchased at the beginning of 1986, two years prior to the marriage. Defendant was a certified public accountant and became an attorney in the early years of the parties' marriage. For most of the marriage, defendant was responsible for managing the parties' taxes and household expenses, although the two always kept their finances separate. Defendant eventually started his own tax and accounting business in the early 2000s.

Outside of their primary occupations, plaintiff and defendant amassed extensive real estate holdings in New Jersey. These properties were purchased and sold throughout the marriage, and the proceeds deposited into the parties' joint investment accounts. The parties jointly paid for the college educations of both their now-adult daughters, took annual vacations domestically and abroad, dined extensively in the greater New York City area, owned three timeshares, purchased a home for over $800,000 in 2005, were members of a local country club, and accumulated over two million dollars in liquid assets.

The marriage began to deteriorate in the 2000s, and defendant moved out of the marital home in September 2010. In 2011, defendant was charged, and later pleaded guilty to, one count of extortion and one count of attempt and conspiracy to commit mail fraud, for which he served a twenty-seven-month

3

prison term from 2015 to 2017. Defendant's CPA license was revoked, and he was disbarred.

Plaintiff's dance school gradually declined over the past decade. Plaintiff's health deteriorated after being diagnosed with multiple sclerosis, which limits her ability to teach dance.

Because of defendant's incarceration, plaintiff was left to manage the parties' finances. Plaintiff utilized proceeds she received from the sale of a property in Elizabeth, New Jersey. Defendant sold his tax and accounting business to John Strydesky (Strydesky), of Strydesky & Company (the Asset Purchase Agreement), just prior to his incarceration. As part of the sale, Strydesky agreed to pay twenty percent of the monies collected from defendant's clients for a three-year period, payable in quarterly installments to plaintiff. Strydesky duly mailed checks to plaintiff, but there was no accounting sent accompanying the payments to ensure twenty percent of the cash received from defendant's former clients was actually paid to plaintiff.

The Asset Purchase Agreement also specified Strydesky was purchasing "All of the following physical assets: office/computer equipment, etc." After the sale, Strydesky certified he destroyed defendant's computer once he obtained all the necessary information from it. Strydesky brought the paper files he did

4

not need to the marital residence. Plaintiff kept these belongings in the marital home's garage along with defendant's other business files.

Upon inspection of these files, plaintiff discovered defendant's letters confirming a company defendant had told her and others to invest in was bankrupt. One of those persons was Greg Parker (Parker), who lent defendant money to invest in the company. Around this time, plaintiff filed for divorce in October 2017.

Plaintiff told Parker about the bankruptcy, and Parker subsequently sued defendant. Because plaintiff and defendant continued to live separately after his release from prison, defendant did not receive the summons and complaint mailed to the marital home. A final judgment by default was subsequently entered against defendant on November 7, 2018 (the Parker Judgment). Parker then placed a judgment lien on the marital home.

Since his release from prison, defendant works as a bookkeeper, and claims he earns approximately $1,500 to $2,200 a month. In 2020, defendant applied for and received two SBA loans to start a stock trading business. These funds were deposited into one of the marital joint accounts. Plaintiff closed her dance school in March 2020. The marital home was sold in February 2020 for

5

$525,800. The Parker Judgment was satisfied from the proceeds obtained from the sale of the marital home.

II.

In reviewing appeals of a family court's rulings after trial, we defer to the trial court, barring an abuse of discretion. S.W. v. G.M., 462 N.J. Super. 522, 530 (App. Div. 2020). The Supreme Court has held the findings of a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Further, "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Invest. Ins. Co., 65 N.J. 474-484 (1974)). Reversal is appropriate "only if the findings were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020) (quoting Rova Farms, 65 N.J. 484). The same standard applies to appeals from a trial court's equitable distribution award, see M.G. v. S.M., 457 N.J. Super. 286, 293-94 (App. Div. 2018), and denials of reconsideration, S.W., 462 N.J. Super. at 530. An award of counsel fees will only be disturbed "on the 'rarest occasion,' and then only because of clear abuse of discretion." Slutsky v. Slutsky, 451 N.J. Super. 332,

366 (App. Div. 2017) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)).  Mistakes of law, however, are reviewed de novo.  S.W., 462 N.J. Super. at 530.

III.

A.    The Equitable Distribution Award

Equitable distribution is governed by N.J.S.A. 2A:34-23(h) and involves a three-step process.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 284, 284 n.4 (2016).  The court must first identify which marital assets are subject to equitable distribution, ascertain each asset's value, and then determine the most equitable allocation of each asset.  Slutsky, 451 N.J. Super. at 355 (quoting Elrom v. Elrom, 439 N.J. Super. 424, 444 (App. Div. 2015)).

"[F]or purposes of the equitable distribution of marital assets, a marriage is deemed to end on the day a valid complaint for divorce is filed that commences a proceeding culminating in a final judgment of divorce."  Genovese v. Genovese, 392 N.J. Super. 215, 225 (App. Div. 2007) (quoting Portner v. Portner, 93 N.J. 215, 225 (1983)).  Assets subject to equitable distribution should share the same evaluation date.  Bednar v. Bednar, 193 N.J. Super. 330, 332 (App. Div. 1984).  Generally, this should be the date the complaint is filed,

although a later date is permissible under extraordinary circumstances compelling equitable considerations. Ibid.

The allocation of distribution is guided by the factors delineated in N.J.S.A. 2A:34-23.1. Slutsky, 451 N.J. Super. at 355. There is a rebuttable presumption each spouse "made a substantial financial or nonfinancial contribution to the acquisition of income and property" during the marriage. N.J.S.A. 2A:34-23.1. However, equitable distribution does not necessarily entail equal distribution. M.G, 457 N.J. Super. at 294. Its goal "is to effect a fair and just division of marital [property]." Ibid. (alterations in original) (quoting Steneken v. Steneken, 183 N.J. 290, 299 (2005)). Trial courts must weigh each case's unique considerations and circumstances rather than rely upon mechanical division. Ibid. (quoting Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977), overruled on other grounds by Petersen v. Petersen, 85 N.J. 638, 643 n.2 (1981)). This is best effectuated "by evaluating the facts and evidence associated with each asset." Ibid.

Courts are also empowered to either "deduct marital debts from the total value of the estate[] or allocate the obligations between the parties." Slutsky, 451 N.J. Super. at 348. The division of the marital estate should account for the

allocation of debts and be based on the same principles as the division of assets. Id. at 348, 366; N.J.S.A. 2A:34-23.1(m).

The trial court erred by failing to perform the first step and calculate which assets were subject to equitable distribution. This is especially important as there was testimony from both parties that they kept their finances separate throughout the marriage. Instead, the trial court added up all of plaintiff's assets with all of defendant's assets and divided the amount by two, distributing all assets equally. Because the trial court failed to make findings with respect to the statutory factors, we reverse the award of equitable distribution and remand for findings consistent with this opinion.

B.    The Marital Debt Award.

After splitting the parties' combined assets equally, the trial court applied credits against each parties' amount of awarded assets to distribute the marital debt individually. Plaintiff argues her Honda should not have been subject to equitable distribution because she traded in her old 2004 Volvo for her 2016 Honda. We disagree. The 2004 Volvo was purchased during the marriage and is presumptively part of the marital estate. Tannen v. Tannen, 416 N.J. Super. 248, 281 (App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011). Plaintiff adduced no evidence otherwise. Plaintiff is correct, however, in claiming the court erred by

providing defendant with a $13,250 credit against her equitable distribution for her Honda. The documentary evidence and testimony show plaintiff paid $19,000 for her Honda after receiving a credit for trading in the 2004 Volvo. Defendant's first motion for reconsideration did not provide any evidence to support his valuation of plaintiff's Honda. Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). We conclude although plaintiff's Honda is presumptively subject to equitable distribution, the percentage of distribution attributable to defendant, if any, must be calculated after a consideration of all factors enumerated in N.J.S.A. 2A:34-23.

Further, with respect to defendant's SBA loans, the trial court erred in finding the SBA loans were marital debt subject to equitable division. Plaintiff filed the complaint for divorce on October 2, 2017. Defendant did not obtain the SBA loans until approximately two-and-a-half years later. For the purposes of equitable division, the SBA loans were debt acquired by defendant after the marriage. Genovese, 392 N.J. Super. at 225 (quoting Portner, 93 N.J. at 225). Although the funds flowed into a marital account while the divorce was still pending, that action alone does not automatically make the debt marital. See Wadlow v. Wadlow, 200 N.J. Super. 372, 380 (App. Div. 1985) (finding the trial

court erred when it failed to exclude money clearly intended to be separate property from the marital estate despite the fact the funds were commingled).

Because the court incorrectly calculated certain credits, we vacate the allocation of marital debt and remand for findings consistent with N.J.S.A. 2A:34-23.

C.    The Alimony Award.

Pursuant to N.J.S.A. 2A:34-23(b), courts are permitted to "award one or more of the following types of alimony:  open durational alimony; rehabilitative alimony; limited duration alimony or reimbursement alimony to either party." The statute provides a non-exhaustive list of factors that must be considered by the court in making its determination.  N.J.S.A. 2A:34-23(b)(1)-(12).  An award of limited duration alimony is intended to recognize a "dependent spouse's contributions to a relatively short-term marriage that demonstrated attributes of a 'marital partnership.'"  J.E.V. v. K.V., 426 N.J. Super. 475, 486 (App. Div 2012) (quoting Cox v. Cox, 335 N.J. Super. 465, 486 (App. Div. 2000)). Because limited duration alimony is not intended to be a replacement for permanent alimony, a limited duration award is "singularly inappropriate" for long marriages, typified by significant length and contributions.  Ibid. (Cox, 335 N.J. Super. at 482).  Indeed, the length of the marriage is the "defining

distinction" between open and limited duration alimony.  Id. at 488 (quoting

Cox, 335 N.J. Super. at 483).  Open duration alimony is the presumptive award

for lengthy marriages.  See Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340,

353 (App. Div. 2009).

However, the length of a marriage alone cannot determine alimony.

Economic dependence is a "crucial finding" necessary to award alimony.  Gnall

v. Gnall, 432 N.J. Super. 129, 143 (App. Div. 2013), rev'd on other grounds, 222

N.J. 414 (2015).  "The extent of actual economic dependency, not one's conduct

as a cohabitant, must determine the duration of support as well as its amount."

Reese v. Weis, 430 N.J. Super. 552, 571 (App. Div. 2013) (quoting Gayet v.

Gayet, 92 N.J. 149, 154 (1983)).  Courts must evaluate all the facts when

determining whether a claim of economic dependence warrants long-lasting

support.  Gnall, 432 N.J. Super. at 153.

Although we understand the court did not find either party credible, and

the trial court found the parties took extreme positions regarding their ability to

earn in the future, the trial court's award of limited duration alimony for four

years incorrectly applied the law.  The trial court noted defendant was sixty-two

years old, and by the time of the end of the four-year alimony period, "defendant

will reach his retirement age for social security purposes and may well decide

12

to retire."  This is not a basis for awarding limited duration alimony in a long-term marriage.

N.J.S.A. 2A:34-23(j) permits an award of alimony to be "modified or terminated upon the prospective or actual retirement of the obligor."  When the obligor reaches "full retirement age," there is a rebuttable presumption that alimony will terminate.  N.J.S.A. 2A:34-23(j)(1).  That presumption may be overcome for good cause based on a separate list of non-exhaustive factors. Ibid.

The record does not show defendant sought to retire prior to attaining full retirement age.  Defendant testified he obtained two SBA loans to start a stock-trading business, in addition to his continued work as a bookkeeper.  Thus, it was reversible error for the court to award limited durational alimony because defendant "may" seek to retire in the future.

Factually, the amount of the award is also not supported by the evidence. The trial court awarded $1,500 monthly based on both parties' representations of limited income but did not ascertain whether either or both parties were underemployed and whether additional income should be imputed to them for an award of alimony.  Gnall v. Gnall, 462 N.J. Super. 433, 447 (App. Div. 2019) (quoting Caplan v. Caplan, 182 N.J. 250, 268 (2005)) (requiring courts consider

the "potential earning capacity of an individual, not his or her actual income," when determining a party's ability to pay alimony); Lepis v. Lepis, 83 N.J. 139, 156 (1980) ("The need for support must be assessed with a view towards the earning capacity of the individual . . . in the marketplace.").

The trial court did not explain how it arrived at the $1,500 figure, and noted only that the aggregate amount, $72,000, "is less than ten percent of the assets that defendant will receive through equitable distribution." This finding does not comport with N.J.S.A. 2A:34-23. We therefore vacate the alimony award and remand for findings consistent with this opinion and the statutory factors.

D.    The Attorney's Fee Award.

Finally, awards of attorney fees in a divorce proceeding are governed by Rule 5:3-5(c) and are subject to subsections (b), (c), and (d) of Rule 4:42-9. R. 5:3-5(c).

Plaintiff appeals the $10,000 in consequential attorney fees awarded out of defendant's total attorney fees award of $12,394. In its DJOD, the trial court engaged in an analysis of the factors set forth Rule 5:3-5(c). The only factor the court appears to have found in support of any fee award is the reasonableness and good faith of parties' position during and prior to trial. However, the

14

$10,000 award is untethered to this analysis and predicated solely on plaintiff's alleged role as defendant's fiduciary during defendant's period of incarceration. According to the court, the case, "[t]o some extent, . . . was attenuated because of that circumstance." On reconsideration, the trial court affirmed its $10,000 award, stating because plaintiff "had access to records and defendant's computer, which were placed in the garage of the [marital home]," during defendant's incarceration, "as well as [Strydesky's] testimony" she did not comply with her fiduciary obligation. Both the trial court's legal conclusion and its factual findings are incorrect.

Spouses are not fiduciaries to one another. See Tannen, 416 N.J. Super. at 262-63 (observing that divorcing spouses only have a duty "to deal fairly with each other"); see also F.G. v. MacDonnell, 150 N.J. 550, 563-64 (1997). Nor does the Asset Purchase Agreement create a fiduciary relationship between plaintiff and defendant. The agreement required Strydesky "pay 20% of cash collected from clients for a three-year period, payable quarterly to [plaintiff] . . . ." The agreement establishes plaintiff was an intended third-party beneficiary, not a fiduciary. Ross v. Lowitz, 222 N.J. 494, 513 (2015) (quoting Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259 (1982)).

A-2271-21

The court's factual findings as expressed in its motion for reconsideration on this issue are also unsupported by the record. Plaintiff testified she never possessed defendant's office computer and did not know what happened to it after the sale of the business. The Asset Purchase Agreement states defendant sold the computer to Strydesky, and he testified he acquired defendant's computer and destroyed it.

The award also appears unrelated to any affidavit of service or statement of fees submitted by defendant, which are required pursuant to Rule 4:42-9(b)-(c). The record before us shows those materials were provided to support the unchallenged award of $2,394. There is nothing to support either the basis or the amount of the $10,000 award at issue.

In sum, we uphold the entry of the DJOD, but vacate all of the monetary awards for equitable distribution, distribution of marital debt, alimony, and attorney fees, except the attorney fee award of $2,394 to plaintiff, which was not challenged on appeal. We remand this matter to the trial court for findings consistent with the applicable statutes, case law, and this opinion.

Reversed in part, affirmed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2271-21